UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
In re:

JEFFREY L. GOLDBERG,

                         Debtor.
----------------------------------------------------------------x
MARY ROCCO,

                         Plaintiff,

      - against -

JEFFREY L. GOLDBERG,

                         Defendant.
----------------------------------------------------------------x

Case No. 811-78915-reg

Chapter 11

Adv. Proc. No. 812-08099-reg

## <u>MEMORANDUM DECISION</u>

Before the Court are cross motions for summary judgment by the Plaintiff, Mary Rocco ("Plaintiff"), and the Debtor-Defendant ("Debtor"), Jeffrey L. Goldberg, in this adversary proceeding seeking a determination of dischargeability pursuant to section 523(a)(6) of the Bankruptcy Code.  The Plaintiff and the Debtor each recognize that the critical issue before the Court is whether the Debtor's pre-petition conduct which gave rise to the debt in this case rises to the level of "willful and malicious" as required by section 523(a)(6).  Relying on the doctrine of collateral estoppel, the Plaintiff argues that debt in the form of a prepetition state court judgment for pregnancy discrimination and retaliation under the New York State Human Rights Law ("NYSHRL"), Executive Law § 290 *et seq.*, is, by the very nature of the underlying cause of action, non-dischargeable.  In the alternative, the Plaintiff argues that the factual findings supporting the underlying judgment are sufficient to establish willful and malicious injury.  The

Plaintiff is asking this Court to find that when presented with a state court judgment for pregnancy discrimination and retaliation, the Debtor should be precluded by collateral estoppel from being permitted to introduce any evidence on the question of whether the underlying behavior was committed "willfully and maliciously" as is necessary to satisfy the requirements of section 523(a)(6).  The Debtor argues that the state court judgment should not be given collateral estoppel effect, and that the state court's undisputed factual findings fail to establish that the judgment-debt is non-dischargeable within the meaning of section 523(a)(6) of the Bankruptcy Code.

Although the New York State legislature has proscribed pregnancy discrimination as sufficiently abhorrent to impose financial consequences for such conduct, Congress has not determined to add liability for pregnancy discrimination to the list of non-dischargeable debts under section 523(a).  As such, a thorough collateral estoppel analysis must be conducted.  This Court has been very clear in prior decisions that when conducting a collateral estoppel analysis it reviews state court decisions strictly as they are written and will not interpret the prior decision so as to satisfy necessary elements of section 523(a) unless the prior findings are clear and unequivocal.

In the instant case, a legal finding of a "willful and malicious injury," *per se*, was not necessary to satisfy the statutory requirement for the state court to enter a judgment for discrimination or retaliation.  Therefore, the judgment itself cannot stand alone as a basis for a finding of non-dischargeability.  However, the extensive findings of fact as set forth in support of the judgment are sufficiently clear and unequivocal to warrant the application of the doctrine of

collateral estoppel.  In this Court's view, those findings are sufficient to support a finding of willful and malicious injury in this non-dischargeability action.

Accordingly, the Plaintiff's motion for summary judgment is granted and judgment of non-dischargeability will enter in her favor.  The Debtor's motion for summary judgment is denied.

## FACTS

Mary J. Rocco, the Plaintiff, was employed as an attorney for the Debtor's law firm, Jeffrey L. Goldberg, P.C., from 2000 until 2005.  During that time she gave birth to three children, taking maternity leave of approximately three months in each instance.  She was terminated from employment upon her return to work from maternity leave on June 6, 2005, following her third pregnancy.  On June 1, 2006, the Plaintiff filed a complaint with the New York State Division of Human Rights ("NYSDHR") against the Debtor, the law firm, and the firm's managing attorney.  She alleged, inter alia, that (1) she was subjected to discriminatory treatment during her third pregnancy; (2) she complained of the treatment to the defendants; and (3) her employment ultimately was terminated in retaliation for her complaints.  The Plaintiff prevailed after an evidentiary hearing before an administrative law judge ("ALJ") and a final order was entered by the NYSDHR.  The ALJ's decision was affirmed by the New York State Supreme Court Appellate Division, Second Department on June 28, 2011, and judgment was entered in the amount of $244,665.05.

Detailed factual findings were made by the ALJ.  Those factual findings are as follows:

The Plaintiff was a thirty three year old mother of three children.  At the time of her termination, the Plaintiff was an associate attorney at the Debtor's law firm and she was qualified for that position.  From 1997 to 2000, prior to her employment with the firm as an attorney, the Plaintiff worked for the firm as a legal intern while she went to law school.  The Debtor's law firm practice areas included employment discrimination law.  The Debtor was supportive when the Plaintiff's first child was born in August 2002 and he afforded her a flexible work schedule when she returned to work from maternity leave.  In 2004, during Plaintiff's second pregnancy and at a time when Plaintiff was hospitalized due to pregnancy-related complications, the Debtor hired a male associate because, according to the Debtor, "he couldn't have babies."  It was around this time that the Debtor began to make the Plaintiff feel uncomfortable about her pregnancy and impending maternity leave.  While Plaintiff was out on her second maternity leave in the spring of 2004, the Debtor began discussions with Eric Sanders regarding his employment with the firm.  The Debtor hired Mr. Sanders on July 19, 2004, and promoted him to managing attorney on December 18, 2004.

The Plaintiff returned from her second maternity leave the same day Mr. Sanders started with the firm.  From July 19, 2004 until March 9, 2005, the Plaintiff was "routinely given undesirable assignments and clerical tasks, and her direct contacts with clients and [the Debtor] were reduced."  (ALJ Decision ¶ 10).  When the Plaintiff became pregnant with her third child the Debtor and Mr. Sanders thought she was "hiding it with big clothing", and commented that the Plaintiff was having "Irish twins."  (ALJ Decision ¶ 11).  When the Plaintiff announced to the Debtor that she was pregnant a third time, he responded, "[N]ot again.  I need to speak to Mr. Sanders".  (ALJ Decision ¶ 12).  On February 17, 2005, the firm revoked the Plaintiff's company

car, her cell phone and credit card, while other employees of the firm retained those benefit for

an additional six months.  Although the Plaintiff was afforded a flexible schedule she maintained

full time hours during her employment.

In March 2005, the Plaintiff complained to the Debtor that she was being penalized and

retaliated against for her pregnancy.  He apologized for revoking her car, cell phone and credit

card, assured her that there were no problems with her work product, and said he would discuss

her situation with Mr. Sanders.  A few days later, just prior to her third maternity leave, the

Debtor told the Plaintiff that she should "go have babies."  (ALJ Decision ¶ 19).  While on

maternity leave, in May 2005, the Plaintiff called the Debtor and asked him to address her

complaint of discrimination.  The Debtor was evasive and did not address her concerns.  On June

6, 2005, when the Plaintiff returned from maternity leave she was fired.  There was a new

attorney in her office, all of her personal belongings had been packed up and she could not log

into her computer.  The Debtor claimed that he was not aware the Plaintiff was returning to work

on June 6, 2005, but the ALJ found that claim not to be credible.  An associate at the firm

corroborated the Plaintiff's testimony that she was in fact fired.

The Plaintiff testified before the ALJ that she "felt humiliated, embarrassed and

distraught over the loss of her job." (ALJ Decision ¶ 35).  In support of her claim for mental

anguish, the Plaintiff "provided evidence [in the underling action] of . . . vomiting, preterm labor,

and bleeding, and testified to being placed on anti-depressants and having problems with her

marriage and in caring for her third child." (Decision of the Appellate Division, Plaintiff's

Motion, Ex. B).

With respect to the Plaintiff's discrimination claim, the ALJ found that Plaintiff satisfied her burden of establishing that she was a member of a protected class, she was qualified for the position she held, she suffered an adverse employment action, and that the Debtor's actions occurred under circumstances giving rise to an inference of discrimination. (ALJ Decision at 8). The ALJ also found that the Debtor and Mr. Sanders "harbored discriminatory animus towards [the Plaintiff] because of her pregnancy." Significantly, the ALJ also found that the Debtor's "proffered explanations for the [Plaintiff's] discharge" were not credible and therefore the Debtor failed to satisfy his burden to prove that his termination of the Plaintiff was motivated by "legitimate, nondiscriminatory reasons."

The ALJ also found that the Plaintiff satisfied her burden of proving her retaliation claim by showing that she engaged in a protected activity, the Debtor was aware that she participated in this activity, she suffered an adverse employment action, and there was a causal relationship between the protected activity and the adverse action. The ALJ found a causal link between her complaints of discrimination and her termination, and also found that the Debtor did not satisfy his burden of proving that his actions were motivated by legitimate, non-discriminatory reasons. (ALJ Decision at 11).

On August 8, 2011, a judgment in the amount of $244,665.05 was entered against the Debtor, his law firm and Mr. Sanders, jointly and severally ("Judgment"). The Judgment, with interest, included $222,041.49 attributable to lost wages and $22,623.56 attributable to mental anguish.

## *PROCEDURAL HISTORY*

The Debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code on December 22, 2011, and the case was converted to chapter 11 on March 28, 2012.[1]  The Debtor seeks to discharge his personal liability on the Judgment in this bankruptcy.

In this adversary proceeding, the Plaintiff seeks to have the entire Judgment debt excepted from discharge pursuant to section 523(a)(6) of the Bankruptcy Code, based on the collateral estoppel effect of the underlying Judgment and the findings of fact upon which it is based.  The Plaintiff filed a motion for summary judgment on May 29, 2012, and the Debtor filed a cross motion on July 6, 2012.  A hearing was held on July 18, 2012 at which time this matter was taken under submission.  This Memorandum Decision constitutes the Court's findings of fact and conclusions of law to the extent required by Bankruptcy Rule 7052.

## *JURISDICTION*

A proceeding to determine dischargeability under section 523(a)(6) of the Bankruptcy Code is a core proceeding over which this Court has jurisdiction. *See* 11 U.S.C. §§ 157 and 1334.

---

[1]    The Debtor also caused a chapter 7 petition to be filed for Jeffrey L. Goldberg, P.C. on that same date.  That case also was converted to chapter 11 and is currently pending before this Court.

### DISCUSSION

In relevant part, section 523(a)(6) provides that: "A discharge under section 727 [or] 1141 … of this title does not discharge an individual debtor from any debt … for *willful and malicious injury* by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6) (2012) (emphasis added).  The critical issue presented by the cross motions of the parties is whether the factual and/or legal issues determined by the ALJ in imposing liability for discrimination and retaliation under New York law should be given preclusive effect on the issue of willful and malicious injury under section 523(a)(6) such that summary judgment in the Plaintiff's favor would be appropriate.

### I.  Summary judgment

Rule 56 of the Federal Rules of Civil Procedure[2] states, in pertinent part, that summary judgment is appropriate, "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  In ruling upon a summary judgment motion the Court is to determine whether a genuine issue of fact exists, not to resolve disputed issues of fact.  *See Celotex Corp. v. Catrett*, 477 U.S. 317, 330 (1986).  "When viewing the evidence, the court must "assess the record in the light most favorable to the non-movant and ... draw all reasonable inferences in [the non-movant's] favor." *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000) (citing *Delaware & Hudson*

---

[2]    Rule 56 governs the motion for summary judgment in this adversary proceeding by virtue of Fed. R. Bankr. P. 7056.

*Railway Co., v. Consolidated Rail Corp.*, 902 F.2d 174, 177 (2d Cir. 1990)), *cert. denied*, 540 U.S. 811 (2003).

If the principles of collateral estoppel can be applied in this case, then the Debtor and this Court are bound by the legal conclusions and the facts as determined in the underlying state court proceedings and this case is ripe for summary judgment.

## II.  Collateral Estoppel

It is well-settled that the doctrine of collateral estoppel, also known as issue preclusion, applies in the case of dischargeability actions within the bankruptcy court's exclusive jurisdiction. *See Grogan v. Garner*, 498 U.S. 279, 284 (1991).  Bankruptcy courts must give full faith and credit to a valid and final state court judgment to the same extent another court within that state would recognize that judgment.  *See* U.S. Const. art. IV, § 1 (Full Faith and Credit Clause); *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984); *see also* 28 U.S.C. § 1738.  In determining whether a state court judgment should be given preclusive effect in a federal proceeding, federal courts must look to state preclusion laws.

Under New York's preclusion doctrine, in relevant part, "collateral estoppel 'bars a party from relitigating in a second proceeding *an issue of fact or law* that was litigated and actually decided in a prior proceeding, if that party had a full and fair opportunity to litigate the issue in the prior proceeding and the decision of the issue was necessary to support a valid and final judgment on the merits.'" *Giaimo v. Detrano (In re Detrano)*, 266 B.R. 282, 291 (E.D.N.Y. 2001) (emphasis added); *see also PenneCom B.V. v. Merrill Lynch & Co., Inc.* 372 F.3d 488, 491

(2d Cir. 2004) (citing *Schwartz v. Pub. Adm'r*, 246 N.E.2d 725, 729, 24 N.Y.2d 65, 70, 298

N.Y.S.2d 955, 960 (1969)). "The party asserting collateral estoppel bears the burden of

demonstrating that it is entitled to this relief." *May Ship Repair Contr. Corp. v. Barge Columbia*

*N.Y.*, 160 F. Supp. 2d 594, 599 (S.D.N.Y. 2001) (citing *In re Sokol*, 113 F.3d 303, 306 (2d Cir.

1997)). Relevant to section 523(a) proceedings, this Court has previously held that:

> When relying on collateral estoppel and a pre-bankruptcy judgment against the debtor as
> a basis for Section 523 relief, the bankruptcy court must be able to point to *clear and*
> *unequivocal factual and/or legal findings* in the prepetition judgment which would satisfy
> the requisite elements of Section 523(a).

*Indo-Med Commodities, Inc. v. Wisell (In re Wisell)*, No. 811–08163, 2011 WL 3607614, at *1

(Bankr. E.D.N.Y. Aug. 16, 2011) (Grossman, J.) (emphasis added).

Therefore, in order for collateral estoppel to apply the Plaintiff must show that the Debtor

had a full and fair opportunity to litigate the Plaintiff's claims in the state court, and further that

the legal finding of discrimination or retaliation by the ALJ, and/or the factual findings

supporting such determinations, clearly and unequivocally establish a non-dischargeability claim

under section 523(a)(6).

### A. Full and Fair Opportunity to Litigate

To establish the requisite identity of parties, it must be shown that the party against whom

preclusion is sought to apply "had a full and fair opportunity to contest a prior determination" of

the issue. *See Board of Educ. v. NYS Human Rights Appeal Bd.*, 482 N.Y.S.2d 495, 496-97

(N.Y. App. Div. 2d Dept. 1984). In the instant case, it is undisputed that there were three named

defendants held jointly and severally liable to the Plaintiff for unlawful discrimination and

retaliation under New York law:  the Debtor; the law firm, Jeffrey L. Goldberg, PC; and Eric

Sanders, the managing partner of the firm.  The Debtor not only had the opportunity to contest

the state court claims, but he in fact appeared and participated in the proceedings.  Therefore, this

Court finds that the Debtor had a full and fair opportunity to litigate the Plaintiff's allegations of

discrimination and retaliation under New York law.


### B.  *Necessary to Support a Valid Final Judgment on the Merits*

Step two of the collateral estoppel analysis under New York law requires a finding that

the decision of the state court issue was necessary to support a valid and final judgment on the

merits.  With respect to the requirement that the issues have been determined by a valid and final

judgment, it has been established that a claim or issue raised and resolved within the New York

State Division on Human Rights ("NYSDHR") and subject to judicial review by New York

courts is entitled to preclusive effect within New York state courts.  *See Pajooh v. Dept. of*

*Sanitation City of N.Y.*, No. 11 Civ. 03116, 2012 WL 4465370, at *3 (S.D.N.Y. Sept. 27, 2012)

(citing *Kremer v. Chemical Construction Corp.*, 456 U.S. 461, 483-85 (1982)); *see also Yan Yam*

*Koo v. Dep't of Bldgs. of City of N.Y.*, 218 F. App'x 97, 98 (2d Cir. 2007) (a "New York state

court affirmation of the [NYSDHR's] finding of no probable cause would preclude federal

litigation based on the same facts . . . ).

The crux of the analysis here is whether the factual and/or legal issues to be precluded in

this section 523(a)(6) case are the same as that involved in the prior discrimination and

retaliation proceeding, and whether the state court findings were necessary to support the

judgment.  In general, the moving party's burden of proof is satisfied by "'identifying the precise issues litigated in the prior action and establishing a record sufficient to reveal the controlling facts.'"  *Denton v. Hyman (In re Hyman)*, 335 B.R. 32, 37-38 (S.D.N.Y. 2005), *aff'd*, 502 F.3d 61 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009) (citation omitted).

To determine whether an identity of issues exists this Court must either find that (i) the elements of discrimination and retaliation under NYSHRL §§ 296(1)(a) and (7) are identical to the elements of section 523(a)(6), or (ii) the judgment under NYSHRL §§ 296(1)(a) and (7) is predicated upon material and necessary factual findings that would be sufficient to support a finding of "willful and malicious" injury under section 523(a)(6) of the Bankruptcy Code.

### *(1) New York Human Rights Law – N.Y. Exec. Law §§ 296(a)(1) and (7)*

### *(a) Discrimination*

Under New York law, "distinctions based solely upon a woman's pregnant condition constitute sexual discrimination."  *Elaine W. v. Joint Diseases N. Gen. Hosp., Inc.*, 613 N.E.2d 523, 524-25 (N.Y. 1993).  Specifically, under the New York Human Rights Law, it is unlawful "[f]or an employer ... because of an individual's age, race, creed, color, national origin, sexual orientation, military status, sex, disability, predisposing genetic characteristics, marital status, or domestic violence victim status  . . . to discriminate against such individual in compensation or in terms, conditions or privileges of employment." N.Y. Exec. Law § 296(1)(a).  Although the statute does not specifically name pregnancy as a type of actionable discrimination, courts have held pregnancy discrimination to be actionable under the NYSHRL.  *See Malena v. Victoria's*

*Secret Direct, LLC et al*, --- F.Supp.2d ----, 2012 WL 3542192, at *5 (S.D.N.Y. Aug. 16, 2012)

(finding "'distinctions based solely upon a woman's pregnant condition constitute sexual

discrimination.'").  To prevail in a case of pregnancy discrimination, the plaintiff must prove by

a preponderance of the evidence that her pregnancy played a "motivating role" in prompting the

employer's discriminatory treatment.  *See Zaken v. Boerer*, 964 F.2d 1319, 1324-25 (2d Cir.),

*cert. denied*, 506 U.S. 975 (1992) (applying NYSHRL).

Pregnancy discrimination claims under the NYSHRL are analyzed using the three-step

burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792

(1973).  *See Lambert v. McCann Erickson*, 543 F. Supp. 2d 265, 277 (S.D.N.Y. 2008) (citing

*Weinstock v. Columbia University*, 224 F.3d 33, 42 n.1 (2d Cir. 2000)).  Under this framework,

the plaintiff must first establish a prima facie case of discrimination by showing that:

(1) she is a member of a protected group;
(2) she was qualified for the position;
(3) she experienced an adverse employment action;
(4) under circumstances giving rise to an inference of unlawful discrimination.

*Dixon v. Int'l Fed'n of Accountants*, 416 F. App'x 107, 109 (2d Cir. 2011); *see also Lambert*, 543

F. Supp. 2d at 277.  "Once a plaintiff meets this initial burden, the burden then shifts to the

defendant to offer a legitimate nondiscriminatory reason for the termination. If defendant does

so, the burden returns to the plaintiff to show that the real reason for plaintiff's termination was

[her pregnancy]."  *Kerman–Mastour v. Fin. Indus. Regulatory Auth.*, 814 F. Supp. 2d 355, 366

(S.D.N.Y. 2011) (citation omitted).  While the burden of production shifts under this framework,

"[t]he ultimate burden of persuading the trier of fact that the defendant intentionally

discriminated against the plaintiff remains at all times with the plaintiff."  *Tex. Dep't of*

*Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

Unlawful discrimination under the NYSHRL directed at a particular employee is commonly known as a "disparate treatment" claim.  That is, a plaintiff alleges that he or she has been subjected to unlawful discrimination, *individually*.  It is settled that, for an individual to prevail on disparate treatment claims "discriminatory intent is required [and] … the plaintiff must demonstrate *deliberate discrimination*…." *Lewis v. City of Chicago, Ill.*, 130 S.Ct. 2191, 2199 (2010) (citing *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 624-29 (2007), among other cases); *Simmons-Grant v. Quinn Emanuel Urquhart & Sullivan, LLP*, --- F. Supp. 2d ----, 2013 WL 30057, at *6 (S.D.N.Y.  Jan. 3, 2013) ("Individual private plaintiffs must prove that they were, individually, the victims *of intentional discrimination*.") (citing *Chin*, 685 F.3d at 149).  On the other hand, a "disparate impact" claim alleges unlawful discrimination against a protected *class* of individuals.  Disparate impact claims can be established by showing that an employer's discriminatory "pattern or practice" had an impermissible and injurious discriminatory effect on the protected class, even absent proof of the employer's intentional conduct.  *See Chin v. Port Authority of N.Y. & N.J.*, 685 F.3d 135 (2d Cir. 2012); *Duncan v. NYC Transit Auth.*, 127 F.  Supp. 2d 354, 360 (E.D.N.Y. 2001). *Cf. Simmons-Grant*, 2013 WL 30057, at *6 (finding that Second Circuit recognizes the rule that "the 'pattern or practice' method of establishing the existence of discrimination … is not available to individual private plaintiffs" and that individual plaintiffs must show intent) (citing *Chin*, 685 F.3d at 149).

In the instant case, the ALJ found that the Plaintiff had established the requisite elements of an individual disparate treatment claim, and that the Debtor's proffered non-discriminatory reasons for the adverse employment actions were not legitimate.  In short, the Plaintiff was subjected to deliberate discriminatory treatment in violation of the NYSHRL § 296(1).

*(b) Retaliation*

Retaliation laws generally are "intended to protect employees from genuine workplace mistreatment and harassment . . ." *Ruggieri v. Harrington*, 146 F. Supp. 2d 202, 218 (E.D.N.Y. 2001). The NYSHRL provides that "[i]t shall be an unlawful discriminatory practice for any person engaged in any activity to which this section applies to retaliate or discriminate against any person because he or she has opposed any practices forbidden under this article." N.Y. Exec. Law § 296(7). Here, the forbidden practice is "[f]or an employer ... because of an individual's [pregnancy] ... to discriminate against such individual…." N.Y. Exec. Law § 296(1)(a). To establish a prima facie case of retaliation under the NYSHRL, the plaintiff must show that:

    (1) she engaged in protected activity;
    (2) the employer was aware of this activity;
    (3) the employer took adverse action against the employee; and
    (4) a causal connection exists between the protected activity and the adverse action.

*See Malena*, 2012 WL 3542192, at *9-10 (citing *Dumay v. City of New York*, No. 09-CV-6866, 2011 WL 4901311, at *8-9 (S.D.N.Y. Oct. 14, 2011)). "A presumption of retaliation is created if the plaintiff meets her initial burden." *Tomici v. New York City Dep't of Educ.*, -- F. Supp. 2d --, 2012 WL 6608510, at *15 (E.D.N.Y. Dec. 19, 2012) (citing *Di Giovanna v. Beth Israel Med. Ctr.*, 651 F.Supp.2d 193, 203 (S.D.N.Y. 2009)). The burden of production then shifts to the defendant to state a legitimate, non-discriminatory reason for the adverse employment action. *See Farias v. Instructional Sys., Inc.*, 259 F.3d 91, 98 (2d Cir. 2001).

An employee is held to engage in a protected activity when she opposes unlawful discrimination. *See Winston v. Verizon Services Corp.*, 633 F. Supp. 2d 42, 51-52 (S.D.N.Y. 2009). Opposition can be formal or informal, including complaints to managers or officers of an employer. *See Sumner v. United States Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990). The very

nature of retaliation indicates a conscious intent by the retaliating party to 'get back' at the targeted party, and to cause injury in some form of retribution.  Under New York law "[a] prima facie case of retaliation requires evidence of a subjective retaliatory motive for the termination." *Board of Educ. of New Paltz Cent. Sch. Dist. v. Donaldson*, 839 N.Y.S.2d 558, 561 (N.Y. App. Div. 3d Dept. 2007) (citing *Pace Univ. v. NYC Comm'n on Human Rights*, 647 N.E.2d 1273 (N.Y. 1995)).  Where an employer "was at all motivated by retaliatory animus, the law is violated," notwithstanding objective impressions.  *See Valenti v. Massapequa Union Free School Dist.*, No. 09-CV-977, 2012 WL 1038811, at *17 (E.D.N.Y. Mar. 28, 2012) (citing *Sumner v. U.S. Postal Serv.*, 899 F.2d 203, 209 (2d Cir. 1990)).

The Plaintiff in this case complained of discrimination directly to the Debtor, her employer, and was subjected to termination of her benefits and ultimately her job as a result. Significantly, the ALJ found that the Debtor's proffered reasons for firing the Plaintiff were inconsistent and implausible.  The record relied on by the state tribunals and given credit in this Court makes clear that the Plaintiff was subjected to a pattern of discriminatory treatment regarding her pregnancy, even after having complained of the conduct, and that she bore the ultimate mistreatment in the form of unlawful termination motivated by the Debtor's discriminatory animus.   The necessary finding of proximate causation indicates that the unlawful termination was directly related to the Plaintiff's complaint to her employer, and that the adverse employment actions were wrought with retributivist intent to cause Plaintiff's injury.

We now compare the elements of the state causes of action to the elements of section 523(a)(6).

### *(2)  Exception to Discharge – 11 U.S.C. § 523(a)(6)*

As previously stated, section 523(a)(6) of the Bankruptcy Code provides, in relevant part, that "[a] discharge under section 727 [or] 1141 … of this title does not discharge an individual debtor from any debt … for *willful and malicious injury* by the debtor to another entity or to the property of another entity…." 11 U.S.C. § 523(a)(6) (2012) (emphasis added).  The burden of establishing this exception to discharge is on the Plaintiff, who must meet the burden by a preponderance of the evidence.  *Grogan v. Garner*, 498 U.S. 279, 289-90 (1991).  "As the consequences to a debtor of finding a debt excepted from discharge are severe, exceptions to discharge are to be narrowly construed and all doubts should be resolved in the debtor's favor."  *In re Wisell*, 2011 WL 3607614, at *7 (citing *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 66 (2d Cir. 2007), *cert. denied*, 555 U.S. 1097 (2009)).

Courts from time to time have attempted to list or categorize conduct that has risen to the level of "willful and malicious" under section 523(a)(6).  *See, e.g., Musilli v. Droomers (In re Musilli)*, 379 F. App'x 494, 498 (6th Cir. 2010) (creating non-exclusive list of willful and malicious conduct).  While some courts have suggested that the section 523(a)(6) exception is typically appropriate only where the underlying injury rises to the level of intentional tort, *see, e.g.*, *Lockerby v. Sierra*, 535 F.3d 1038, 1041-42 (9th Cir. 2008) (collecting cases), such a bright line distinction is neither conclusive nor favored.  *See Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 322 (7th Cir. 2012) (recognizing that "not even all intentional torts are covered [under §523(a)(6)]."); *Kimmel v. State of N.Y.*, 906 N.Y.S.2d 403, 407 (N.Y. App. Div. 4th Dept. 2010) (holding that discrimination claims under NYSHRL are statutory and do not give rise to tort

liability).  Had Congress intended to so limit section 523(a)(6), it could easily have achieved such limitation by express language.

Indeed, there are numerous cases in which courts have found sexual harassment and retaliation judgments vulnerable to exception from discharge in bankruptcy under section 523(a)(6).  *See, e.g.*, *Sells v. Porter (In re Porter)*, 539 F.3d 889, 894 (8th Cir. 2008) (sexual harassment found non-dischargeable using collateral estoppel); *Jones v. Svreck (In re Jones)*, 300 B.R. 133, 137 (B.A.P. 1st Cir. 2003) (sexual harassment found non-dischargeable using collateral estoppel); *Basile v. Spagnola (In re Spagnola)*, 473 B.R. 518, 522 (Bankr. S.D.N.Y. 2012) (sexual harassment found non-dischargeable using collateral estoppel); *Petro v. Miller (In re Miller)*, 403 B.R. 804, 816 (Bankr. W.D. Mo. 2009) (racial discrimination found non-dischargeable using collateral estoppel). *Cf. Wright v. Blythe-Nelson*, No. Civ. A. 399CV2522D, 2004 WL 1923871, at *1 (N.D. Tex. Aug. 24, 2004) (sexual harassment found non-dischargeable after trial); *Ford-Torres v. O'Shea (In re O'Shea)*, No. 07-6084, 2010 WL 2901624, at *3-4 (Bankr. D. Or. July 21, 2010) (retaliation claim found non-dischargeable after trial); *Nesler v. Thomason (In re Thomason)*, 288 B.R. 812, 815 (Bankr. S.D. Ill. 2002) (wrongful termination found non-dischargeable after bankruptcy court trial).

On the other hand, Debtor cites to a number of cases for the proposition that no preclusive effect should be given to a prior discrimination judgment.  *See, e.g.*, *NLRB v. Gordon (In re Gordon)*, 303 B.R. 645 (Bankr. D. Colo. 2003) (administrative findings lacked identity of issue, thus no preclusive effect); *Hamilton v. Nolan (In re Nolan)*, 220 B.R. 727, 730 (Bankr. D.C. 1998) (D.C. Commission finding of discrimination not given collateral estoppel effect where no factual finding of malice required); *Pretasky v. Lejeune (In re Pretasky)*, Nos. 91-0162-

7, A91-2108-7, 1991 WL 11002291, at *2 (Bankr. W.D. Wis. Oct 18, 1991) (finding of discrimination is not "inherently" willful and malicious).

The decisions declining to give preclusive effect to judgments, i.e., legal findings, of discrimination or retaliation in non-dischargeability proceedings are consistent with this Court's prior rulings in this area.  That is, that collateral estoppel should only be applied when the prior judgment is based upon findings that clearly and unequivocally establish non-dischargeability. The 'effect-centric' field of anti-discrimination laws, specifically disparate treatment discrimination claims, does not lend itself to any express requirement that the aggrieved party prove that the defendant acted with malice.  *See infra*.  Consistent with the majority of published opinions on this issue, this Court finds that a discrimination and retaliation judgment, although it reflects a debtor's willful disregard for the protected civil rights of others, does not *per se* establish an exception to discharge under section 523(a)(6).

Although a finding of liability under the NYSHRL should not be held to necessarily or conclusively satisfy the elements of section 523(a)(6), the legal and factual elements still must be analyzed on a case by case basis.  Thus, it is appropriate to conduct a detailed comparison of the elements comprising causes of action under the NYSHRL to the requirements for exception to discharge under section 523(a)(6).

### *(a) Willful*

As used in section 523(a)(6), the word "willful" indicates "a deliberate or intentional injury, not merely a deliberate or intentional act that leads to injury." *Kawaauhau v. Geiger*, 523 U.S. 57, 61 (1998).  Therefore, if the conduct upon which a finding of discrimination or

retaliation under the NYSHRL causes an intentional or deliberate injury, it satisfies the "willfulness" requirement of section 523(a)(6). This critical point is often misunderstood. Merely showing that a debtor committed a conscious act that resulted in an injury is not sufficient. The act must be shown to have been done with the intent to cause the injury. This point is as true in a case of discrimination as it is in any other case under the statute.

Although the NYSHRL does not explicitly require a showing of intent, such finding is clearly implicit in the determination. With respect to disparate-treatment discrimination claims, "the merits turn on a dispute as to the employer's intent." *Holcomb v. Iona College*, 521 F.3d 130, 138 (2d Cir. 2008) (noting that the prohibited reasons for an employer's conduct must be "at least one of the 'motivating' factors") (citations omitted). The findings of discrimination and retaliation in the instant case were necessarily grounded in a factual record sufficient to establish that the adverse employment action was motivated by unlawful discriminatory animus; that is, that the employer's conduct was intentional. *See Lewis v. City of Chicago, Ill.*, 130 S.Ct. 2191, 2199 (2010) ("[f]or disparate-treatment claims, … the plaintiff must demonstrate *deliberate discrimination*…."). And, where an employer's deliberate conduct is found to constitute unlawful discrimination against an individual employee, it necessarily follows that such intent was for the purpose of causing injury. In short, the findings of discrimination and retaliation under NYSHRL in this case establish that the Debtor, motivated by impermissible discriminatory factors, did intentionally cause an adverse employment action harming the Plaintiff. The very nature of retaliation under the NYSHRL "requires evidence of a subjective retaliatory motive." *Board of Educ. of New Paltz Cent. Sch. Dist. v. Donaldson*, 839 N.Y.S.2d at 561. Intending such retribution satisfies the willfulness requirement under section 523(a)(6).

In this Court's view, there is no question that the Debtor's conduct was "willful" for purposes of section 523(a)(6).  However, this Court need not, and does not, hold that legal findings of discrimination or retaliation *per se* satisfy the "willfulness" requirement.  As discussed later in this Memorandum Decision, the undisputed factual findings in the state court proceedings in support of the discrimination and retaliation judgment, are sufficient to establish the "deliberate or intentional" injury contemplated by section 523(a)(6).

### *(b) Malicious*

To succeed on her section 523(a)(6) claim, the Plaintiff must also show that the injury caused by the Debtor was malicious, meaning "wrongful and without just cause or excuse, even in the absence of personal hatred, spite, or ill-will." *Ball v. A.O. Smith Corp.*, 451 F.3d 66, 69 (2d Cir. 2006) (citing *Navistar Fin. Corp. v. Stelluti (In re Stelluti)*, 94 F.3d 84, 87 (2d Cir. 1996)).  "Malice may be constructive or implied. . . . Implied malice may be demonstrated by 'the acts and conduct of the debtor in the context of [the] surrounding circumstances.'" *In re Stelluti*, 94 F.3d at 88 (citation omitted).

While some courts have found that discriminatory conduct rose to the level of "malice," particularly in cases involving sexual or *quid pro quo* harassment, it is clear from most anti-discrimination statutes like the NYSHRL that statutory liability may obtain without direct proof of malice.  The NYSHRL provides comprehensive relief to plaintiffs in employment discrimination and retaliation cases in the form of "compensatory damages" which, in part or in whole, may be comprised of an award for injury resulting from employer conduct that may or may not constitute malice. *See* N.Y. Exec. Law § 297(4)(c)(iii).  Proof of malice may be necessary when seeking punitive or other statutorily enhanced damages, but not to determine

liability on the underlying discrimination claim.  *See* N.Y. Exec. Law § 297(4)(c)(vi) (providing

for assessment of civil fines and penalties payable to the state for acts found to be "willful,

wanton or malicious"); N.Y. Exec. Law § 297(4)(c)(vi) (providing for punitive damage awards

"in cases of housing discrimination only").  However, the unavailability or absence of a punitive

damage award is not determinative on the issue of whether an injury was willful or malicious.

*See Higgins v. Olson (In re Olson)*, 32 F. App'x 194, 194 (8th Cir. 2002).

There being no requisite or express finding of "malice" (or its analog) in holding the

Debtor liable for discrimination or retaliation under the NYSHRL, the Court cannot find that the

legal elements necessary to support a judgment of discrimination and retaliation under the

NYSHRL are identical to the elements of section 523(a)(6).  Accordingly, in this case collateral

estoppel will not apply to the legal findings of the prior proceeding.  Although the legal

conclusions are not preclusive on the issue of non-dischargeability, collateral estoppel may

nevertheless apply to the underlying *factual* findings of the state court.

## III.  *The material facts established by the prior Judgment*

As stated earlier, the ALJ made detailed findings of fact to support the discrimination and

retaliation judgment.  It is those same facts and circumstances that the Plaintiff here claims give

rise to a finding of non-dischargeability in the instant case.  Thus the facts established in the state

proceeding are material to the issue before this Court.  Principals of full faith and credit prevent

this Court from allowing the Debtor to re-litigate in this proceeding issues which were finally

determined by the state court.  As such the material facts are undisputed and summary judgment

is appropriate.  The Court must now determine whether the Debtor's conduct, as established by the state court, was willful and malicious.

The facts are that the Plaintiff was employed by the Debtor.  The Debtor's practice areas included employment discrimination.  From this, the Court can assume that the Debtor had more than a passing understanding of employment discrimination laws.  The Plaintiff gave birth to three children while she was employed by the Debtor's law firm.  She was afforded time for three maternity leaves and a flexible schedule upon her return to work after her first child, but at all times maintained full time hours and performed her work satisfactorily.  Sometime after the Debtor announced her second pregnancy, the Debtor began to make the Plaintiff feel uncomfortable about her pregnancy and gave her less desirable work assignments and less client contact.  During her third pregnancy, the Debtor revoked the Plaintiff's cell phone credit card and company car  -- six months prior to revoking those benefits for other employees.  When the Plaintiff complained to the Debtor about this discriminatory treatment, the Debtor assured her there were no problems with her work product and said he would discuss the situation with Mr. Sanders, the managing attorney.  While on maternity leave, the Plaintiff asked the Debtor to address this discriminatory treatment, but he did not.  When the Plaintiff returned to work after maternity leave she found her belongings packed and another attorney occupying her office.  She was fired.  The ALJ found that she was fired in retaliation for complaining about the Debtor's discriminatory conduct.  The ALJ also found that the Debtor had no legitimate, non-discriminatory reason for terminating the Plaintiff's employment.

In addition to the element of willfulness that is implicit in the state court discrimination and retaliation findings, it is clear to the Court based on the undisputed facts that the Debtor

acted with deliberate malice when he terminated the Plaintiff's employment, thus causing her injury.  In reaching this conclusion, this Court has viewed the undisputed facts in the light most favorable to the Debtor.  However, in a case involving overt acts that constitute intentional discrimination, it defies rationality to suggest that the Debtor's conduct was objectively benign.  Nor can the Debtor, whose proffered non-discriminatory reason for his conduct was rejected, be deemed to have acted without the taint of unlawful discriminatory animus.  It would defy logic to find that an overt act constituting disparate treatment discrimination, that is, discrimination aimed at an individual, could occur absent a malicious intent to harm.  To hold otherwise would sanction the view that there exists some "just cause or excuse" for discrimination, *see Ball*, 451 F.3d at 69, where the state court has already found otherwise.  Because "[m]alice may be implied by the acts and conduct of the debtor in the context of the surrounding circumstances," *id*., and because those surrounding circumstances have been finally decided and memorialized as the factual findings supporting a judgment of unlawful discrimination and retaliation, this Court is satisfied that there is no just cause or excuse for the Debtor's unlawful conduct.  Absent such just cause or excuse, and for all of the other reasons stated herein, the Court finds that the Debtor's conduct was willful and malicious and satisfies section 523(a)(6).

***CONCLUSION***

For the foregoing reasons, the Court finds that the Plaintiff's motion should be granted

and the Debtor's motion denied.  The full amount of the judgment-debt shall be excepted from

discharge under section 523(a)(6).  A Judgment consistent with this Memorandum Decision will

issue forthwith.


Dated: Central Islip, New York
      January 29, 2013          ***/s/ Robert E. Grossman***
                                 Robert E. Grossman
                                 United States Bankruptcy Judge